IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 23, 2024

**STATE OF TENNESSEE v TAYLOR WOLFINGER**

**Appeal from the Circuit Court for Blount County**
**No. C-28578 Tammy M. Harrington, Judge**

_____

**No. E2023-01752-CCA-R3-CD**
_____

Defendant, Taylor Wolfinger, appeals a judgment from the Blount County Circuit Court revoking his probation and ordering him to serve the balance of his previously ordered probationary sentence in confinement. On appeal, Defendant argues that the trial court abused its discretion by finding that he violated the terms of his probation and revoking his probation to serve his original sentence. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

MATTHEW J. WILSON, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and TOM GREENHOLTZ, JJ., joined.

Joseph Liddell Kirk, Madisonville, Tennessee (on appeal), and Mack Garner, District Public Defender, Maryville, Tennessee (at hearing), for the appellant, Taylor S. Wolfinger.

Jonathan Skrmetti, Attorney General and Reporter; Raymond J. Lepone, Assistant Attorney General; Ryan K. Desmond, District Attorney General; and Tiffany Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

I. **FACTUAL AND PROCEDURAL BACKGROUND**

This appeal stems from the trial court's revocation of Defendant's probation. On October 24, 2022, Defendant pleaded guilty to aggravated domestic assault, a Class C

- 1 -

felony. The trial court sentenced Defendant to three years imprisonment, which it suspended to supervised probation. The court also included in its judgment the following special conditions of Defendant's probation: an alcohol and drug assessment, a batterer's intervention program, and an affidavit stating that Defendant had dispossessed his firearms.

Less than one year later, on September 25, 2023, an affidavit of violation of probation was filed against Defendant. It stated that Defendant had been arrested on May 17, 2023, by the McMinn County Sheriff's Department on charges of felony aggravated domestic assault; felony possession of methamphetamine with intent to sell or deliver; and misdemeanor possession of unlawful drug paraphernalia.

The trial court held a revocation hearing on November 13, 2023. Only one witness testified—Deputy Sarah Gray. At the time of the hearing, Deputy Gray had been with the McMinn County Sheriff's Department for approximately three years. On May 15, 2023, the same victim from Defendant's original domestic assault conviction called 911 after an altercation with Defendant. A portion of the 911 call was played for the court and admitted as an exhibit to the hearing. On the call, the victim and her children can be heard. Deputy Gray responded to the 911 call, but Defendant fled the scene before she arrived at the victim's residence. Deputy Gray testified that upon her arrival, the victim was "crying" and "hysterical." Deputy Gray also observed that the victim "had red marks and scratches on both sides of her neck." While at the residence, Deputy Gray took statements from the victim and her children who witnessed the incident.

Two days later, Deputy Gray, along with another deputy, returned to the same residence to arrest Defendant for aggravated domestic assault based on the May 15 incident. Defendant was outside of the residence when they arrived. During the course of the arrest, the other deputy patted Defendant down, and inside Defendant's "left cargo pocket, an extra[-]large Sharpie [pen] was found." When the deputies opened the pen, they discovered that it had been "hollowed out." Inside the hollowed-out pen "was a baggie that contained a crystal-like substance which was determined to be methamphetamine weighing at 24.17 grams." Defendant also "had $925 cash in his pocket" at the time. Deputy Gray acknowledged that, since the time she arrested Defendant, the most recent aggravated domestic battery charge against Defendant had been dismissed. The drug charges, however, had been bound over to the McMinn County Grand Jury.

Defendant chose not to testify or offer any proof at the hearing.

Following Deputy Gray's testimony, Defendant's counsel argued that the only evidence before the court was "proof merely that the charges [had] been brought." He did acknowledge, however, that Defendant clearly had "significant drug problems." Defendant, therefore, proposed that if the court found a violation had been committed, the

consequence should be a partial revocation and reinstatement to an alternative sentence. Specifically, he asked the court to sentence Defendant to 120 days of confinement along with an alcohol and drug assessment and a no-contact order with the victim.

The State asked the court to completely revoke Defendant's probation. In support, the State pointed to the victim's 911 call, during which one of the victim's children said, "I think my mom is about to die." Further, it argued that Defendant had been ordered to complete an alcohol and drug assessment and have no contact with the victim as conditions of his original sentence. Despite that, the State noted the two were living together. The State conceded that the new drug charges were only pending at the time of the revocation hearing but argued that it was at Defendant's request that the probation violation had proceeded to the revocation hearing. The State said it had been willing to wait until the drug charges were resolved, but Defendant pushed to move forward with the hearing more quickly.

The trial court agreed that it was uncontested Defendant's aggravated assault had been dismissed. The court noted, however, that Defendant had felony and misdemeanor drug charges still pending resolution. The court further noted that simply being in possession of illegal drugs is a violation of Defendant's probation conditions. The court said that it had not heard "much of a contest that the rules of probation have been violated." As a result, the court found that "the State has met its burden . . . and proven that [Defendant] has violated the terms and conditions of supervised probation and therefore probation is revoked."

After revoking Defendant's probation, the trial court then addressed the potential consequences of Defendant's violation. The court pointed out that Defendant was on probation for a felony and had obtained a new felony charge. The court also referenced the victim's 911 call and said that it considered Defendant's violation of the no-contact order to be a concern. More specifically, while the court acknowledged the May 15, 2023 incident with the victim was not a basis to violate Defendant's probation, it did consider it relevant for sentencing purposes. Ultimately, the court determined that Defendant was not a good candidate for probation, and that he would be incarcerated for the balance of his three-year sentence. The court allowed Defendant approximately eighty-three days of jail credit, and on November 13, 2023, the trial court entered a written order memorializing its holding. Defendant timely appealed that order.

## II. LAW AND ANALYSIS

The issue on appeal is whether the trial court abused its discretion by finding that Defendant violated the terms of his probation and fully revoking his probation—thereby

ordering him to serve the balance of his sentence incarcerated. Pursuant to Tennessee Code Annotated section 40-35-311(e)(2):

> If the trial judge revokes a defendant's probation and suspension of sentence after finding, by a preponderance of the evidence, that the defendant has committed a new felony, new Class A misdemeanor, zero tolerance violation as defined by the department of correction community supervision sanction matrix, absconding, or contacting the defendant's victim in violation of a condition of probation, then the trial judge *may* revoke the probation and suspension of sentence by an order duly entered upon the minutes of the court, and cause the defendant to commence the execution of the judgment as originally entered, which *may* be reduced by an amount of time not to exceed the amount of time the defendant has successfully served on probation and suspension of sentence prior to the violation.

(emphasis added).[1]

Accordingly, probation revocation is a two-step consideration in which the trial court makes two distinct determinations. *State v. Dagnan*, 641 S.W.3d 751, 753 (Tenn. 2022). First, the court determines whether to revoke probation; if so, the court must determine the consequences which shall apply upon revocation. *See id*. at 757. "[T]hese are two distinct discretionary decisions, both of which must be reviewed and addressed on appeal." *Id.* at 757-58. "Simply recognizing that sufficient evidence existed to find that a violation occurred does not satisfy this burden." *Id.* at 758.

If the trial court determines that a defendant has violated his probation, the court may:

> (1) order incarceration for some period of time; (2) cause execution of the sentence as it was originally entered; (3) extend the defendant's probationary period not exceeding one year; (4) return the defendant to probation on appropriate modified conditions; or (5) resentence the defendant for remainder of the unexpired term to a sentence of probation. *See* T.C.A. §§ 40-35-308(c)(1), (2); -310; - 311(e)(1), (2) (2021).

*State v. Brewster*, No. E2021-00793-CCA-R3-CD, 2022 WL 2665951, at *3 (Tenn. Crim. App. July 11, 2022), *no perm. app. filed*.

---

[1] We note that the violations provided for in this sub-section are for non-technical violations.

## 1. The Probation Violation

Although "a new arrest and pending charges are proper grounds on which a trial court can revoke a defendant's probation, a trial court may not rely on the mere fact of an arrest or an indictment to revoke a defendant's probation." *State v. Booker*, No. E2023-004350CCA-R3-CD, 2024 WL 1928840, at *4 (citing *State v. Harkins*, 811 S.W.2d 79, 83 n.3 (Tenn. 1991)). Indeed, the State must produce evidence "'in the usual form of testimony' in order to establish the probationer's commission of another offense while on probation." *Id.* (first quoting *State v. Ellison*, No. 01C01-9708-CR-00361, 1998 WL 272955, at *2 (Tenn. Crim. App. May 29, 1998); and then citing *State v. Chaney*, No. 01C01-9801-CC-00010, 1999 WL 97914, at *1 n.2 (Tenn. Crim. App. Feb. 18, 1999)). The State is not required to show a conviction but needs only to prove by a preponderance of the evidence that a defendant violated the law. *State v. Winn*, No. M2009-00094-CCA-R3-CD, 2010 WL 2516855, at *3 (Tenn. Crim. App. June 22, 2010) (citing *State v. Edwards*, No. W1999-01095-CCA-R3-CD, 2000 WL 705309, at *3 (Tenn. Crim. App. May 26, 2000), *perm. app. dismissed* (Tenn. Sept. 11, 2000)). "[C]ompliance with our state laws is an automatic condition of a suspended sentence, and when a trial court learns that a defendant has violated the law, it has the power to initiate revocation proceedings." *State v. Stubblefield*, 953 S.W.2d 223, 225 (Tenn. Crim. App. 1997).

Defendant asserts that the trial court abused its discretion when it found that Defendant violated the terms of his probation based on the "minimal evidence" presented regarding Defendant's new felony drug possession and misdemeanor paraphernalia charges. According to Defendant, "Deputy Gray's description of the substance found inside the Sharpie taken from [Defendant] during his arrest was conclusory and without explanation for what led her to conclude it was methamphetamine, or why the Sharpie had been in [Defendant's] possession."

The State argues that the trial court properly found—by a preponderance of the evidence—that Defendant had violated the terms of his probation. According to the State, Defendant's assertion that there was only "minimal evidence" that Defendant violated the terms of his probation is unavailing, and Defendant cites to no authority for his "minimal evidence" theory. We agree with the State.

At the revocation hearing, Deputy Gray testified unequivocally that the Sharpie found on Defendant's person during his arrest contained a "crystal-like substance which was determined to be methamphetamine weighing at 24.17 grams." Further, the deputy testified Defendant had "$925 cash in his pocket" when he was arrested. No other evidence contradicted this proof. During Defendant's cross-examination of the deputy, she was not asked a single question regarding the methamphetamine and drug paraphernalia found in Defendant's possession. At the hearing, the trial court found that the two new drug charges,

which had been bound over to the grand jury, as well as its finding that Defendant was in possession of illegal drugs, constituted violations of the terms of Defendant's probation.

We agree with the trial court that the proof presented at the revocation hearing proved by a preponderance of the evidence that Defendant violated his probation by committing a new felony and possessing methamphetamine. The court did not abuse its discretion in this regard, and Defendant is not entitled to relief on this issue.

## 2. Consequence for the Violation

The second step of *Dagnan* requires the trial court to determine the consequence for a defendant's violation. We review this issue for an "abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *Dagnan*, 641 S.W.3d at 759. In the absence of sufficient findings, this court "may conduct a de novo review if the record is sufficiently developed for the court to do so, or [this court] may remand the case to the trial court to make such findings." *Id.* In this case, the trial court did set forth sufficient findings on the record to support its decision on the consequence of the violation, so we review this issue for an abuse of discretion.

At the revocation hearing, Defendant requested that the trial court split the remainder of his sentence between confinement and drug rehabilitation. However, the court was under no obligation to choose Defendant's preferred remedy. When determining the consequence for a probation violation, a trial court may consider "the number of revocations, the seriousness of the violation, the defendant's criminal history, and the defendant's character." *Dagnan*, 641 S.W.3d. at 759 n.5. A defendant who violates probation has no right to another alternative sentence. *See Brewster*, 2022 WL 2665951, at *5.

Here, a review of the record shows the trial court properly considered many of these factors. Specifically, the court considered that Defendant was on probation for felony aggravated assault but had new pending felony charges for drug possession. The court also found that when Defendant possessed methamphetamine on May 17, 2023, he had violated the condition that he not possess illegal drugs. Thus, despite the dismissal of the aggravated domestic assault charge, Defendant still violated two separate conditions of his probation. Further, even though it was not a basis for Defendant's probation violation, Defendant's contact with the victim while under a no-contact order was appropriate to consider under Defendant's character as someone who would not likely comply with the further rehabilitative orders of the court. *See State v. Banning*, No. E2022-00188-CCA-R3-CD, 2022 WL 10225186, at *5 (Tenn. Crim. App. Oct. 18, 2022) (concluding that "other factors

outweighed the Defendant's request for additional community-based treatment, including that the Defendant could not be expected to comply with the court's rehabilitative orders").

As the court said:

> [H]ere we've heard the 911 call which obviously establishes contact, obviously creates a concern. And so while the domestic assault may have been dismissed the Court can consider the 911 call as well as the no-contact violation as far as sentencing. And that's very significant in this situation. So while it's not a basis of the violation it does greatly impact the Court as far as sentencing that he has violated the no-contact order and that he has pending felony charges. I believe that that presents him as not a good candidate for probation.

The trial court placed sufficient findings and the reasons for imposing Defendant's sentence on the record. As such, its decision is presumed reasonable and nothing in the record overcomes that presumption. We conclude that the trial court properly exercised its discretion by ordering Defendant to serve the balance of his sentence in the Tennessee Department of Correction. Defendant is not entitled to relief on this issue.

## III. CONCLUSION

Based on the foregoing reasoning, authorities, and the record as a whole, we affirm the judgment of the trial court.

_____
MATTHEW J. WILSON, JUDGE